UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| TERRY HYATT, | ) |
| | ) |
| Plaintiff, | ) |
| | )   11-CV-3067 |
| v. | ) |
| | ) |
| JACQUELINE MITCHELL, | ) |
| MICHAEL BEDNARZ, and | ) |
| ALFREDA KIBBY, | ) |
| | ) |
| Defendants. | ) |

OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se, is detained in the Rushville Treatment and Detention Center.  He pursues claims for deliberate indifference to his dental needs.   Now before the Court are Defendants' motions for summary judgment.  For the reasons below, the Court denies Dr. Mitchell's motion for summary judgment and grants the motion for summary judgment by Defendants Bednarz and Kibby.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed. R. Civ. P. 56(c)(B). If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists. Id.; Harvey v. Town of Merrillville, 649 F.3d 526, 529 (7th Cir. 2011). "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." McAllister v. Price, 615 F.3d 877, 881 (7th Cir. 2010).

At the summary judgment stage, evidence is viewed in the light

most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant.  <u>Id.</u>

## FACTS

Plaintiff is detained in the Rushville Treatment and Detention Center pursuant to the Illinois Sexually Violent Persons Act.  Defendant Dr. Mitchell is the only dentist providing services to several hundred residents at the facility.  According to Plaintiff, Dr. Mitchell is supposed to work 15 hours per week at the facility.

On or about November 10, 2010, Plaintiff submitted a request for dental care for a permanent filling for his "right eye tooth," which the parties agree is also called "tooth number 6."  According to Plaintiff, temporary fillings had been placed in tooth number 6 and Dr. Mitchell had planned to do a permanent filling.  Plaintiff's request stated, "You put a temporary filling in my right eye tooth about a month ago.  I know you're real busy.  But you said you'll call me to put a permanent filling

in.  Just a reminder.  Thank you!" (11/10/10 health care request, d/e 52-1, p. 43.)

Dr. Mitchell examined Plaintiff on Sunday, November 21, 2010 at around 8:00 p.m. (the Sunday before Thanksgiving).  According to Plaintiff, Dr. Mitchell put a permanent filling in tooth 7 and began working on tooth number 6.  After working a while on tooth 6, Dr. Mitchell told Plaintiff that fixing tooth 6 was going to require a root canal, which would take about two hours.  According to Plaintiff, Dr. Mitchell also said that she did not have time to do the root canal because she needed to catch a train and that extracting tooth 6 would be faster and allow her to catch the train.  (Pl.'s Dep. pp. 11, 13-14, 29; 52-1.).  Plaintiff signed a consent form for the extraction, but, according to Plaintiff, did so only under duress and only after the tooth had actually been extracted.  In Plaintiff's mind he had little choice but to sign the consent, since Dr. Mitchell had already begun drilling.  Plaintiff feared that refusing to consent to the extraction would have caused him to suffer a painful hole in his mouth until another appointment could be

arranged in the indefinite future. (Hyatt Aff. ¶ 2, d/e 57-3.)

Dr. Mitchell performed the extraction of tooth 6, but, according to Plaintiff, part of tooth 6 did not come out. (Plaintiff's Dep. p. 19, d/e 52-1, p. 6.) After the procedure, Dr. Mitchell told Plaintiff he would be fine and that she would check on him when she returned on Sunday, November 28, 2010. However, the day after the extraction Plaintiff awoke to throbbing pain and missing stitches. (Hyatt Aff. ¶ 4.) November 28th (the Sunday after Thanksgiving) came and went, with no appearance by Dr. Mitchell. Plaintiff later heard that Dr. Mitchell was out for what Plaintiff believes was elective and pre-planned eye surgery. He believes that Dr. Mitchell knew she would not be back to see Plaintiff on November 28th.

On November 28, 2010, after Dr. Mitchell did not show, Plaintiff filled out a health care request slip seeking help for his pain and reporting what he believed to be an infection at the extraction site. (11/28/10 request slip, 52-1.) What happened to this request is not in the record. Plaintiff submitted another health care request the next day, on

November 29, 1010.  (11/29/10 request slip, 52-1.)  In his November 29 request, Plaintiff described intense pain and relayed his fear that he had an exposed nerve.  The same day—November 29th— Plaintiff was seen by Dr. Lochard, a physician who works at the facility.  Plaintiff's medical progress notes from that day reflect that Dr. Lochard examined the extraction site, noting mild tenderness, no swelling, no redness, and no discharge.  (Plaintiff's medical progress note dated 11/29/10, d/e 52-1, p. 31.)  Dr. Lochard prescribed Plaintiff pain medications for Tramadol and Motrin and referred Plaintiff to Dr. Mitchell, who still had not returned.

Plaintiff filed an emergency grievance on November 30, 2012, after his appointment with Dr. Lochard.  (Plaintiff's 11/30/12 grievance (mistakenly dated 10/30/10), d/e 58-2, p. 2).  Plaintiff asserted that Dr. Lochard had provided him no help or pain relief.  Plaintiff relayed his extreme pain, a "nasty, foul taste" in his mouth, and his fear that he had an infection.  He asked to be taken to a dentist.  <u>Id.</u>

The next day, on December 1, 2010, Plaintiff's grievance was reviewed and Plaintiff was interviewed.  The person handling Plaintiff's

grievance arranged for Dr. Mitchell to be contacted, and Dr. Mitchell arranged for another dentist, Dr. Jackson, to come to the facility on December 3, 2010 to examine Plaintiff.  (Examiner's response to Plaintiff's grievance, d/e 53-7, p. 3.; Plaintiff's affidavit ¶ 6, d/e 57-3.) Plaintiff received a memo on December 2, 2010, informing him that his grievance had been "deemed a 'potential emergency'" and that Plaintiff would be seen by a dentist the next day.  (12/2/10 memo from Sandra Simpson to Plaintiff, d/e 58-1, p. 3.)

On December 3, 2010, Dr. Jackson saw Plaintiff, ordered an antibiotic, and continued Plaintiff's pain medicines.  Plaintiff's dental records dated 12/3/10 state, "some inflammation apparent though site is healing ok."  (Plaintiff's 12/3/10 dental records, d/e 57-3.)  Plaintiff testified in his deposition that Dr. Jackson told Dr. Mitchell over the phone in Plaintiff's presence that Plaintiff had a post-op infection. (Plaintiff's Dep. p. 18, 52-1, p. 6.)

On December 6, 2010, Plaintiff wrote to Defendant Dr. Bednarz, the Medical Director at the Facility.  That letter recounted Plaintiff's

tribulations to date and stated that Plaintiff was supposed to have a follow up dental appointment on December 5 which had not occurred. (Plaintiff's 12/6/10 letter to Dr. Bednarz, d/e 58-1, p. 1.)  The second page of this letter is not in the record.  Plaintiff received no response to this letter.  Dr. Bednarz avers that he has no recollection of Plaintiff.  Dr. Bednarz also avers that he forwards resident complaints regarding dental care to Dr. Mitchell.  (Bednarz Aff. ¶¶ 5, 6.)

On December 19, 2010, Dr. Mitchell saw Plaintiff and "dug more tooth out" at the extraction site.  (Plaintiff's Dep. p. 19, 52-1, p. 6.)  Plaintiff told Dr. Mitchell that the Motrin was not helping with the severe pain that he was still experiencing.  <u>Id.</u>

On January 30, 2011, Dr. Mitchell saw Plaintiff again to "recontour" or "dig out" the bone at the extraction site.  Dr. Mitchell prescribed an antibiotic.  She next saw Plaintiff on February 12, 2011 to remove Plaintiff's stitches.  Plaintiff was still in pain at that point and the area was still swollen.  (Plaintiff's Dep. p. 23, 52-1, p. 7.)  The next visit was on April 23, 2011, when Plaintiff saw Dr. Mitchell because "[t]here

was still bone coming out." Id.  Dr. Mitchell again prescribed an antibiotic.

Plaintiff testified that he had no further problems with the extraction site after April 23, 2011, but he also testified that he still has pain in the site when he eats.  (Plaintiff's Dep. p. 24, 52-1, p. 7.)

## ANALYSIS

As an initial matter, the Court agrees with Dr. Mitchell that Plaintiff's claim is about tooth number 6, not tooth number 7.  Plaintiff does not contend otherwise, and the Court sees no evidence of deliberate indifference regarding tooth number 7.

Deliberate indifference to Plaintiff's serious dental needs violates Plaintiff's Fourteenth Amendment due process rights.  Board v. Farnham, 394 F.3d 469, 480 (7th Cir. 2005)("At the outset, we reiterate our view that 'dental care is one of the most important medical needs of inmates.'")(quoted cites omitted).  Dr. Mitchell does not dispute that Plaintiff had a serious need for treatment of tooth 6 in November, 2010.  The question is whether Dr. Mitchell was deliberately indifferent to that

need.

On this record, the Court concludes that a rational juror could find that Dr. Mitchell was deliberately indifferent. According to Plaintiff, Dr. Mitchell decided against a root canal to save tooth 6 and instead extracted it so that she could catch a train. That alone allows an inference of deliberate indifference—the absence of the exercise of professional judgment. Deliberate indifference might also be inferred from Plaintiff's testimony that part of his tooth remained after the procedure, yet Dr. Mitchell still left to catch the train, leaving Plaintiff to suffer with a half-done job that resulted in pain and infection which ultimately required three rounds of antibiotics and two rounds of "digging" out the remaining tooth shards. Dr. Mitchell offers no affidavit to counter this conclusion. Accordingly, Dr. Mitchell's motion for summary judgment must be denied.

The Court reaches a different conclusion for Defendants Bednarz and Kibby. Defendant Kibby was the Acting Programs Director during the relevant time frame. She did have the responsibility to review

emergency grievances, but she has no recollection of Plaintiff or of reviewing a grievance from Plaintiff about dental care. (Kibby Aff. ¶¶ 3, 5.) For purposes of this order, the Court assumes that Kibby did review Plaintiff's emergency grievance. However, no inference of deliberate indifference arises from the response to the grievance. The grievance was treated as a potential emergency, as requested by Plaintiff. Plaintiff's medical records from his appointment with Dr. Lochard were reviewed, which noted "mild tenderness, no swelling, no redness and no discharge" and also reflected that Plaintiff was receiving Motrin and Tramadol, medicines which "should be sufficient to alleviate post dental pain." (Response to Plaintiff's 11/29/10 grievance, d/e 58-1, p. 4.) The emergency grievance response further states that Dr. Mitchell had been contacted and arrangements had been made for another dentist to examine Plaintiff on December 3, 2010, just three days after Plaintiff's emergency grievance was filed. No reasonable juror could infer that anyone who handled Plaintiff's emergency grievance was deliberately indifferent.

Defendant Dr. Bednarz, the facility's Medical Director, also has no recollection of Plaintiff, though Plaintiff wrote Dr. Bednarz a letter on December 6, 2010. Yet, as with Defendant Kibby, even assuming that Dr. Bednarz did read Plaintiff's letter, no evidence suggests that Dr. Bednarz was deliberately indifferent. By that time, Plaintiff's emergency grievance had already been handled, and a dentist had been brought in to see Plaintiff. The dental records from December 3rd reflected that Plaintiff's extraction site was "healing ok," and that an antibiotic had been ordered. Further, when Plaintiff sent his letter to Dr. Bednarz, Plaintiff had not filed another health care request or emergency grievance. On the information available at the time, Dr. Bednarz could have reasonably concluded that Plaintiff's needs were being addressed, even after reading Plaintiff's letter.

Plaintiff also argues that Defendants Bednarz and Kibby failed to adequately staff the dental position and failed to provide a dentist during Dr. Mitchell's planned absence. However, a dentist *was* provided for Plaintiff a few days after he filed his emergency grievance. Plaintiff's

constitutional deprivations stem from Dr. Mitchell's actions, not from a systemic understaffing.

IT IS THEREFORE ORDERED:

1) Defendant Dr. Jacqueline Mitchell's motion for summary judgment is denied (d/e 52).

2) The motion for summary judgment by Defendants Bednarz and Kibby is granted (d/e 54).

3) A final pretrial conference is scheduled for Monday, December 10, 2012 at 1:30 p.m..  Plaintiff shall appear by video conference. Defense counsel shall appear in person.  The parties are directed to submit an agreed, proposed final pretrial order at least fourteen days before the final pretrial conference.  Defendant bears the responsibility of preparing the proposed final pretrial order and mailing the proposed order to Plaintiff to allow Plaintiff sufficient time to review the order before the final pretrial conference.  *See* CD-IL Local Rule 16.3.[1]

4)  The clerk is directed to issue a writ to secure the plaintiff's

---

[1] The Local Rules are listed on this District's website: www.ilcd.uscourts.gov.  A sample pretrial order is attached to those rules.

appearance at the final pretrial conference.

     5) The proposed final pretrial order must include the names of all witnesses to be called at the trial and must indicate whether the witness will appear in person or by video conference. Nonparty witnesses who are detained at the Rushville Treatment and Detention Center will testify by video. Other nonparty witnesses may appear by video at the Court's discretion. The proposed pretrial order must also include the names and addresses of any witnesses for whom trial subpoenas are sought. The parties are responsible for timely obtaining and serving any necessary subpoenas, as well as providing the necessary witness and mileage fees. Fed. R. Civ. P. 45.

     6) The Court will circulate proposed jury instructions, a statement of the case, and proposed voir dire questions prior to the final pretrial conference, for discussion at the final pretrial conference. Proposed additional/alternate instructions and voir dire questions must be filed five business days before the final pretrial conference. The jury instructions, statement of the case, and voir dire questions will be finalized at the final

pretrial conference, to the extent possible.

7) Within five business days before the final pretrial conference, the parties shall file a numbered list of all exhibits which they may seek to introduce at the trial. The list of exhibits must number each exhibit and include a short description (for example, Plaintiff's Ex. 1: 11/10/12 health care request). The parties must prepare their own exhibits for introduction at the trial, marking the exhibits with the same number that is on the list submitted to the Court. Exhibits that are introduced at trial will be kept in the Court record. Therefore, the party offering the exhibit is responsible for making a copy of the exhibit to keep for the party's own records. Additionally, the parties are directed to exchange copies of their marked exhibits at least ten days before the final pretrial conference. If a party intends to object to the introduction of a proposed exhibit, that party must provide the Court a copy of the exhibit and an explanation of the grounds for objection at least five business days before the final pretrial conference. Objections will be argued orally at the final pretrial conference.

8) Motions in limine are to be filed at least five business days before the final pretrial conference, to be argued orally at the final pretrial conference.

9) The clerk is directed to issue a writ to secure the plaintiff's appearance at the final pretrial conference.

10) Jury selection and the jury trial are scheduled for January 8, 2013 at 9:00 a.m., on the Court's trailing trial calendar. The actual date for the jury selection and trail will be decided at the final pretrial conference. In light of the Court's busy trial calendar, the parties are reminded that they may consent to a trial before Magistrate Judge Cudmore. 28 U.S.C. § 636(c)(1)(parties may consent to full time Magistrate Judge conducting "any or all proceedings in a jury or nonjury civil matter). Consent is completely voluntary: the parties are "free to withhold consent without adverse substantive consequences." 28 U.S.C. § 636(c)(3).

11) After the final pretrial order is entered, the Clerk is directed to issue the appropriate process to secure the personal appearance of

Plaintiff at the trial and the video appearances of the video witnesses at the trial.

ENTERED:     October 29, 2012

FOR THE COURT:

                              s/Sue E. Myerscough
                            SUE E. MYERSCOUGH
                        UNITED STATES DISTRICT JUDGE